## Adolph Macal v. People ex rel. Josephina Puc.

1. VERDICTS—*Not Sustained by the Evidence.*—Where a case made against a defendant in a bastardy proceeding is too indefinite and uncertain to justify the verdict, it will be set aside.

**Memorandum.**—Bastardy proceedings. In the Criminal Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Appeal

from a judgment of conviction.    Heard in this court at the October term, 1894.    Reversed and remanded.    Opinion filed December 6, 1894.

Jas. E. Cross, attorney for appellant.

Mr. Justice Shepard delivered the opinion of the Court.

The appellant was convicted in the Criminal Court of being the father of a bastard child born unto the relatrix, Josephine Puc.

Neither the people nor the relatrix follow the case into this court.    The evidence upon which the conviction was had was of an indefinite character, outside of the single fact testified to by the relatrix, that the appellant was the father of the child.    She has testified to no time or place where connection between him and herself took place, and has not even testified that it ever did take place.    Her testimony upon the particular subject was limited to answers and questions as follows:

" Q.    Who is the father of that child?    A.    Adolph Macal.

Q.    Who is Adolph Macal, the gentlemen here (indicating defendant)?    A.    Yes, sir.

Q.    The defendant in this suit?    A.    Yes, sir."

The relatrix was between seventeen and eighteen years old.    The appellant was a prosperous young man aged twenty-five years, engaged in the real estate and insurance business, and lived about a half block distant from where the relatrix lived with her mother, who appears to have kept a small shop, selling cigars among other things, which the relatrix seems sometimes to have attended.    The appellant called at the mother's house, which was also her place of business, not exceeding five times in the course of a three years' acquaintance, and four of those visits were on business with a reference to a loan of money and insurance; the fifth visit was in response to a message from the mother, that did not state why she wanted to see him, but when he got there, proved to be with reference to the relatrix being in the family way.

On that occasion the mother, the relatrix and the defendant were the only persons present.

According to the testimony of the mother and relatrix, the mother then told the defendant that the relatrix was in the family way and by him, and that he answered that the relatrix "should not talk that kind of foolishness;" that the mother replied, "that ain't no foolishness. Look for your self and take her for a wife;" and that he then, according to the testimony of the mother but not confirmed by the relatrix, said, "Well, yes; I take her; I will get married with her."

The defendant admits that he went to the house in response to a message requesting him to come there on business, and that when there, and after buying a cigar of the relatrix, the mother came forward from the living apartment in the back part of the store and told him that the relatrix was pregnant, and that he was the cause of it; that he then turned to the relatrix and said, "How in the world do you dare say anything about me in that way? You know it is not true;" that the relatrix made no answer, and that her mother then spoke up and said, "It must be so; the girl told me so;" and he denies having ever said he would marry the relatrix.

The mother also testified that the defendant took the relatrix out "buggy-riding a couple of times," but the defendant denies ever having done so, and the relatrix does not confirm the mother's testimony in that regard.

The defendant also testified that he had never been out with the relatrix to any place, and had never been with her at any time or place, and never had intercourse with her, and never spoke to her, except on occasions when he had been to the store to see her mother on business, and as one neighbor speaks to another when meeting on the street.

Tending to corroborate the defense, a female witness who never saw the relatrix but twice, testified that the relatrix called at her house in May, 1893, which was after the proceedings were begun but before the cause was tried, and in her presence requested one of her male boarders, named Tuma, not to say anything against her (the relatrix) when the case against the defendant should come up for trial.

Macal v. People.

But independently of the testimony of that witness the case made against the defendant is too indefinite and uncertain to justify the verdict.

The testimony of the relatrix shows her to be, even when under oath, an exceedingly flippant and careless person. An impartial reader of her testimony can not but be impressed with the fact that she entertained anything but a serious view of either her own situation or that of the defendant; and when it is considered that it is upon her alone that the serious charge against the defendant rests—for the mother received all the information that she possessed from the relatrix, and there was no corroborating fact or circumstance of any kind except that found in the testimony of the mother, that the defendant said he would marry the relatrix —her manner of testifying, and her character and demeanor as a witness should be most carefully scrutinized.

Under such circumstances the single oath of the relatrix that the defendant is the father of the child, unsupported by a statement of when or where the necessarily precedent occurrence happened, is treacherous ground for judicial decision to stand upon.

Circumstances may easily be imagined under which the testimony of a woman that a particular man is the father of her child would be the statement of a mere conjecture; not even having so many circumstances of probability as Falstaff narrated in First part of King Henry IV, Act II, Scene IV :

"That thou art my son, I have partly thy mother's word, partly my own opinion, but chiefly a villainous trick of thine eye and a foolish hanging of thy nether lip, that doth warrant me."

Courts are familiar with the proneness of juries to find the man charged with the offense of bastardy to be guilty, when a mother, with a child in arms, avers that he is so.

And while juries may ordinarily be right in such cases, yet courts ought also to recognize that the offense is a serious one, both in morals and in legal consequence, and that no man should be convicted of it upon slight evidence.

To recognize any different rule is to place every responsible man in danger of having to make reparation for the indulgences of another who, without ability to make compensation, may over-persuade foolish women.

The judgment will be reversed and the cause remanded.